# Richmond

JOHN LEON TOMPKINS v. COMMONWEALTH OF VIRGINIA.

November 29, 1971.

Record No. 7690.

Present, All the Justices.

*Emory L. Carlton*, for plaintiff in error.

*C. Tabor Cronk, Assistant Attorney General (Andrew P. Miller, Attorney General*, on brief), for defendant in error.

CARRICO, J., delivered the opinion of the court.

John Leon Tompkins, the defendant, was charged upon an indictment with breaking and entering in the nighttime the dwelling of Nettie Wright with intent to murder Helen Vessels. The jury found him guilty as charged and fixed his punishment at five years in the penitentiary. The sentence was imposed by the trial court, and the defendant was granted a writ of error.

The evidence shows that the defendant and Helen Vessels were acquainted with one another. In the early morning hours of August 8, 1970, he raised a window of the dwelling where she lived, entered, and went to her bedroom. She was asleep at the time, and

when she was awakened, she saw him standing beside her bed. She screamed, and he choked her and said, "I am going to kill you." When ordered to leave, he at first refused but then left by the front door.

Testifying in his own behalf, the defendant admitted entering the dwelling, but denied that he had choked or threatened to kill Helen Vessels. He insisted that his only purpose in entering the dwelling was to "try to talk her into getting in the bed."

The defendant first contends that the trial court erred in granting, at the request of the Commonwealth, Instruction No. 6 which was worded as follows:

> "The Court instructs the jury that when the Commonwealth has proven beyond a reasonable doubt that the defendant made an unlawful entry into a dwelling house in the night time, the presumption is that the entry was made for an unlawful purpose and the purpose may be inferred from the surrounding facts and circumstances."

Instruction No. 6 was taken from part of an instruction under consideration in *Garnett* v. *Commonwealth*, 117 Va. 902, 904-05, 83 S.E. 1083, 1084 (1915). The instruction there involved was found to be erroneous, but not because of the language contained in Instruction No. 6. So this language has been considered to have had the tacit approval of this court. *See* Doubles, Emroch and Merhige, *Virginia Jury Instructions* § 113.03 (1964).

The defendant argues, and properly so, that the burden was upon the Commonwealth to prove that he harbored the specific intent to murder Helen Vessels at the time he broke and entered the dwelling in question. The defendant says, however, that Instruction No. 6 improperly permitted the jury to presume the required intent from the mere fact of his unlawful entry, and thus relieved the Commonwealth of its burden of proof.

█ We do not agree. We think it a proper principle of law that when an unlawful entry is made into a dwelling, the presumption is that the entry was made for an unlawful purpose. And we think it likewise correct that the specific purpose, meaning specific intent,[1] with which such an entry is made may be inferred from the surrounding facts and circumstances.

[1] *Johnson* v. *Commonwealth*, 209 Va. 291, 295, 163 S.E.2d 570, 574 (1968); *Merritt* v. *Commonwealth,* 164 Va. 653, 657, 180 S.E. 395, 397 (1935).

In other instructions granted by the trial court, the jury was clearly told that the burden was upon the Commonwealth to establish beyond a reasonable doubt every element of the offense with which the defendant was charged. Instruction No. 6 neither permitted the jury to presume an intent to murder from the mere fact of unlawful entry nor relieved the Commonwealth of its burden of proving the required intent. The instruction left the jury free to convict if it chose to accept the Commonwealth's theory of the case—that the defendant did threaten to kill Helen Vessels and that this after-expressed intent to murder had existed all along. But it also left the jury free to acquit if it chose to accept the defendant's theory—that there never was a murderous intent on his part, but only the purpose to induce Helen Vessels to engage in sexual intercourse. Therefore, it was not error to grant Instruction No. 6.

 The defendant's other contention is that the Commonwealth's Attorney, in his closing argument, improperly told the jury that the defendant was charged with and should be convicted of "attempted murder." This was contrary, the defendant says, to the fact that the indictment charged burglary and to the trial court's instructions on "the law applicable to the crime of burglary."

The defendant admits that he made no objection to the argument of the Commonwealth's Attorney in this respect, but says we should invoke the provisions of Rule 1:8, Rules of Court, "to attain the ends of justice." However, as the Attorney General points out, not only did the defendant fail to make an objection in the trial court, but he also failed to assign error to the remarks of the Commonwealth's Attorney about "attempted murder." So we cannot notice the point. Rule 5:1, § 4.

*Affirmed.*

HARRISON, J., dissenting.

I would apply Rule 1:8 and reverse to attain the ends of justice.

Defendant and Helen Vessels had been together the evening of the alleged crime at a place called the "Big O". After separating defendant decided that he would try to "talk her into letting him get in bed with her". He went to her room for that purpose.

Vessels resided with Mrs. Nettie Wright, whose home was also occupied by two of the Wright children and Thomas Williams, an elderly man. Williams and Vessels slept in the same room which was in fact an enclosed porch on the ground floor. Vessels was

awakened when defendant touched her. She recognized Tompkins and asked "How did you get in here?" When defendant replied "she should not worry about how he got in" she screamed for Mrs. Wright to get him out of the house. At that time she says defendant put his hands on her mouth and throat and threatened her. Williams heard no threat uttered by defendant. Mrs. Wright, upon hearing Vessels scream, said "Anybody in there is going on out". The defendant peacefully and voluntarily "went out" by the front door. And that, in substance, is this whole case.

It is clear that whatever the defendant intended it was not murder. He was interested in sleeping with a live Helen Vessels and entered her room with that expectation. If he ever entertained any intention to do her physical harm it obviously existed only momentarily, and only after his amorous plans were frustrated. If anything it was a transitory idea that died aborning.

Although the record leaves a lot to be desired, the defendant stoutly and correctly maintained in the lower court and here that to sustain a conviction of statutory burglary the Commonwealth must show that he entered Vessels' room with the intent to commit murder. The surrounding facts and circumstances negate such intent. Hence this dissent.