COURT OF APPEALS OF VIRGINIA


Present:  Judges Elder, Annunziata and Senior Judge Coleman[*]
Argued at Richmond, Virginia


KEVIN WAYNE HARRIS

MEMORANDUM OPINION[**] BY
v.    Record No. 2493-99-2          JUDGE SAM W. COLEMAN III
JANUARY 16, 2001

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
James B. Wilkinson, Judge

Carl C. Muzi for appellant.

Steven A. Witmer, Assistant Attorney General
(Mark L. Earley, Attorney General, on brief),
for appellee.


Kevin Wayne Harris was convicted in a jury trial of

voluntary manslaughter and possession of a firearm by a

juvenile.  On appeal, Harris argues that the evidence is

insufficient to support his voluntary manslaughter conviction.

We disagree and affirm the conviction.

---

[*] Judge Coleman participated in the hearing and decision of this case prior to the effective date of his retirement on December 31, 2000 and thereafter by his designation as a senior judge pursuant to Code § 17.1-401.

[**] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND

Viewed from the Commonwealth's perspective, the evidence proved that on April 1, 1999, the defendant, Kevin Harris, shot Timothy Wilhite four times, killing him.

The events which preceded and precipitated the shooting are that on March 31, 1999, Wilhite's younger brother, Reheim Balthrop, and Harris' younger brother, David Harris, had a fistfight. The next day, the day of the shooting, Balthrop and David Harris fought again. Balthrop's older brother, Peter Boone, broke up the fight by pushing David Harris and Balthrop to the ground. As David Harris left crying, he stated, "when I come back my brother is going to kill all of you." Later that day, David and Kevin Harris went back to the area where the fight had occurred, where Kevin Harris told Boone not to "touch" David Harris again. Kevin Harris told Boone, "I will deal with y'all when I come back," and he left walking toward the nearby Amoco store.

Wilhite, Boone, and Wilhite's sister and mother followed Harris to the Amoco store. Several other boys, who were also Wilhite's friends, ran toward the Amoco store, chasing Harris. Harris entered the store and immediately asked the store clerk to call the police. Wilhite followed Harris into the store where Wilhite and Harris began arguing about the fighting between their brothers. Wilhite then struck Harris and they

began to fight until the store clerk and a patron broke up the fight. A store clerk testified that after the fight was broken up, she thought "everything was all right" and that she saw Harris hurriedly leave the store. Wilhite's mother walked out of the store about the same time as Harris, and Wilhite followed both of them. Outside the store, Harris turned to face Wilhite, and Wilhite took a step toward Harris. Harris told Wilhite to "get back." Harris then pulled a gun from his pocket and fired five shots, striking Wilhite four times and killing him. After he was shot the first time, Wilhite fell backwards.

No weapon was found on or near Wilhite after the shooting, and, aside from the defendant's testimony, there was no evidence that Wilhite had or reached for a weapon before being shot.

Kevin Harris' version of the evidence differed from the Commonwealth's. He testified that on his way to the store, he encountered two people that had beaten his brother earlier that day. Harris testified that the two boys told him they were going to "beat [him] to death." Harris did not threaten either of them. Rather, he proceeded to the Amoco store. Before arriving there, Harris noticed several other people were "running up the street behind [him]." Harris recognized Wilhite as one of the "gang members." Harris stated that Wilhite had a reputation for fighting and dealing drugs. Harris entered the store and immediately asked the store clerk to call the police.

Harris testified that he attempted to leave the store through a back exit, but five or six of the "gang members" were blocking the exit. Harris decided to wait in the Amoco store until the police arrived. Wilhite came in the store and began striking Harris. After the store clerk separated them, Harris ran out of the store to escape. Harris testified that, when he got outside, several of Wilhite's friends were standing there and when he turned to go back in the store, he saw Wilhite standing there facing him. Harris testified that Wilhite again hit him in the face. He said that he then saw Wilhite pull a gun from his pants, at which point Harris pulled his gun and shot Wilhite four times. Harris testified that he continued to fire the gun because he did not believe that he hit Wilhite and Wilhite continued to "come" at him.

### ANALYSIS

"On review of a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the Commonwealth, the prevailing party, and grant to it all reasonable inferences fairly deducible therefrom." Robertson v. Commonwealth, 31 Va. App. 814, 820, 525 S.E.2d 640, 643 (2000) (citing Commonwealth v. Jenkins, 255 Va. 516, 521, 499 S.E.2d 263, 265 (1998)). "If there is evidence to support the conviction, an appellate court is not permitted to substitute its own judgment for that of the finder of fact, even if the

- 4 -

appellate court might have reached a different conclusion." Commonwealth v. Presley, 256 Va. 465, 466, 507 S.E.2d 72, 72 (1998) (citations omitted). "The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995) (citations omitted).

Voluntary manslaughter is an unlawful killing done in the heat of passion and upon reasonable provocation. Barrett v. Commonwealth, 231 Va. 102, 105-06, 341 S.E.2d 190, 192 (1986); Canipe v. Commonwealth, 25 Va. App. 629, 642-43, 491 S.E.2d 747, 753 (1997).

> In order to show that a killing occurred in the heat of passion, the evidence must prove the simultaneous occurrence of both "reasonable provocation" and "passion." "Heat of passion is determined by the nature and degree of the provocation and may be founded upon rage, fear, or a combination of both."

Id. at 643, 491 S.E.2d at 753 (citations omitted).

Here, the evidence is sufficient to support Harris' conviction for voluntary manslaughter. While armed with a handgun, Harris went to Wilhite's house to confront Wilhite's brother about assaulting Harris' brother. Before leaving, Harris threatened the boys, stating "I will deal with y'all when I come back." Wilhite, however, followed Harris to the convenience store, and the two argued and fought inside the

store.  When Harris left the store, before the police arrived, the store clerk believed that "everything was all right." Wilhite followed Harris.  Harris faced Wilhite, told him to "get back," and shot Wilhite four times.  Wilhite was standing three to five feet away from Harris, and Wilhite was unarmed.  The Commonwealth's evidence was competent and not inherently incredible.

"Self-defense is an affirmative defense which the accused must prove by introducing sufficient evidence to raise a reasonable doubt about his guilt."  Smith v. Commonwealth, 17 Va. App. 68, 71, 435 S.E.2d 414, 416 (1993) (citation omitted).  "Whether the evidence raises such a reasonable doubt is a question of fact that will not be disturbed on appeal unless plainly wrong or unsupported by the evidence."  Utz v. Commonwealth, 28 Va. App. 411, 415, 505 S.E.2d 380, 382 (1998) (citation omitted).

> Killing in self-defense may be either justifiable or excusable.  If it is either, the accused is entitled to an acquittal.
>
> "Justifiable homicide in self-defense occurs [when] a person, without any fault on his part in provoking or bringing on the difficulty, kills another under reasonable apprehension of death or great bodily harm to himself."

Smith, 17 Va. App. at 71, 435 S.E.2d at 416 (citations omitted).

Harris' evidence does not prove as a matter of law that he acted in self-defense.  See Nelson v. Commonwealth, 168 Va. 742,

- 6 -

747, 191 S.E. 620, 622-23 (1937) (recognizing principle that undisputed facts may establish self-defense as a matter of law); Hensley v. Commonwealth, 161 Va. 1033, 1034-35, 170 S.E. 568, 568-69 (1933) (finding self-defense as a matter of law where accused shot and killed victim after victim, in an unprovoked attack, stabbed the accused in the face); Smith v. Commonwealth, 17 Va. App. 68, 72-73, 435 S.E.2d 414, 417 (1993) (finding self-defense as a matter of law where defendant arguably provoked the initial confrontation, attempted to withdraw from the conflict, had no other reasonable avenue of escape, and took the only action available to prevent his death or serious bodily harm); Foote v. Commonwealth, 11 Va. App. 61, 67-69, 396 S.E.2d 851, 855-56 (1990) (finding self-defense as a matter of law where defendant, who was the victim of an unlawful arrest, used reasonable force to repel his attacker, who confronted him with deadly force). Whether Harris was acting in self-defense was a factual issue for the jury. The jury was properly instructed on the law of self-defense.

Although Harris contends that Wilhite was the aggressor and that he, Harris, acted in self-defense, the jury was not required to believe this testimony. See Rollston v. Commonwealth, 11 Va. App. 535, 547, 399 S.E.2d 823, 830 (1991). Moreover, even if the jury believed that Wilhite in some manner had threatened Harris, by striking Harris again outside the

store or by advancing toward him, on this evidence, the jury could have found that Harris used more force than necessary to repel the threat.  See Cook v. Commonwealth, 219 Va. 769, 773, 250 S.E.2d 361, 364 (1979) (stating that one "may use only such force as appears to him reasonably necessary to repel the attack"); Foote, 11 Va. App. at 69, 396 S.E.2d at 856 (same). The evidence does not prove as a matter of law that Harris acted in self-defense.  The jury was instructed on the law of self-defense and implicitly rejected that claim.

Accordingly, we find the evidence is sufficient beyond a reasonable doubt to support the conviction.  We, therefore, affirm.

Affirmed.